**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DWIGHT L. WRIGHT,<br><br>Plaintiff,<br><br>v.<br><br>PHH MORTGAGE CORPORATION, *et al.*,<br><br>Defendants. | Civil Action No. 26-02129 (GC) (RLS)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Defendants PHH Mortgage Corporation (PHH) and Deutsche Bank National Trust Company, as Trustee for the registered holders of Morgan Stanley ABS Capital I Inc. Trust 2007-HE7, Mortgage Pass-Through Certificates, Series 2007 HE7's (Deutsche Bank) Motion to Dismiss. (ECF No. 6.) Plaintiff opposed, and Defendants replied. (ECF Nos. 7, 9.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendants' Motion is **GRANTED in part** and **DENIED in part**.

# I. BACKGROUND

## A. Factual Background[1]

In 2007, Plaintiff took out a mortgage to purchase his property, located at 47 Stony Hill Drive, Morganville, New Jersey 07751. (ECF No. 1 ¶ 16.) Plaintiff's mortgage loan was later securitized into the Morgan Stanley ABS Capital 2007-HE7 trust, which is managed by Defendant Deutsche Bank. (*See id.* ¶¶ 10, 16.) Plaintiff fell behind on his mortgage payments after the 2008 financial crisis and entered into a Chapter 13 bankruptcy. (*Id.* ¶ 17.) In 2016, Plaintiff executed a loan modification agreement (2016 Loan Modification) with the then-current loan servicer[2] that set out a "New Principal Balance" of approximately $587,967.68, a "Deferred Principal Balance" of approximately $171,967.68, and a final lump sum obligation (referred to as the "balloon amount")[3] of approximately $375,690.71 due in July 2037. (*Id.* ¶¶ 18-19.) Plaintiff alleges that the loan modification agreement included language referring to the Real Estate Settlement Procedures Act (RESPA) when discussing Plaintiff's rights and obligations. (*Id.* ¶¶ 20-22.) Among other things, the RESPA requires accurate, timely, and understandable disclosures to consumers. (*See id.* ¶ 22.)

---

1 On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation modified).

2 It is unclear from the face of the Complaint, but it appears this agreement was reached with a prior loan servicer and not Defendant PHH.

3 A "balloon mortgage" or "balloon-payment mortgage" is "[a] mortgage requiring periodic payments for a specified time and a lump-sum payment of the outstanding balance at maturity." *Mortgage*, Black's Law Dictionary (12th ed. 2024). The "balloon amount" is the lump sum outstanding at maturity. *See id.*; *see also Payment*, Black's Law Dictionary (12th ed. 2024) (defining "balloon payment" as "[a] final loan payment that is usu. much larger than the preceding regular payments and that discharges the principal balance of the loan.").

Plaintiff alleges that there was—and remains—a lack of clarity regarding the ownership of Plaintiff's mortgage loan. He asserts that public records and documents in his possession "show at least two separate 'assignment' documents purporting to transfer Plaintiff's loan to Deutsche Bank as trustee" and the assignment documents conflict with each other. (*Id.* ¶¶ 23-24.) As such, Plaintiff sent a purported Qualified Written Request and Notice of Error (QWR/NOE)[4] to Defendant PHH on May 27, 2025. (*Id.* ¶ 27.) He contends that he sent this request via certified mail to "PHH's designated QWR/NOE address, consistent with PHH's notices and federal mortgage-servicing rules." (*Id.* ¶ 28.) Plaintiff's request identified his loan number, property address, and cited to the RESPA and associated Regulation X.[5] (*Id.* ¶ 29.) In this QWR/NOE, Plaintiff requested that PHH:

> a. Provide a complete payment history from the date of origination, including all debits, credits, fees, reversals, adjustments, deferments, and suspense entries;
>
> b. Explain how the "Current Principal Balance," "Deferred Principal," and "Balloon Amount" were calculated;
>
> c. Explain how the balloon payment at the end of the loan term was derived from the principal, deferred principal, interest, and payment stream;
>
> d. Identify the current owner or assignee of the loan and provide sufficient documentation to confirm that identification (for example, copies of any assignments into a trust); and

---

[4] Under 12 C.F.R. § 1024.35, a qualified written request (QWR) that asserts an error in the servicing of a mortgage loan is treated as a notice of error (NOE). Plaintiff submitted one detailed request to PHH on May 27, 2025, which he refers to as his "QWR/NOE." (ECF No. 1 ¶ 27.) Accordingly, in this context, Plaintiff's purported QWR is also his NOE; the Court will treat the requests as one.

[5] Regulation X, 12 C.F.R. § 1024.1 *et seq.*, was "issued by the Bureau of Consumer Financial Protection to implement" the RESPA. 12 C.F.R. § 1024.1; *see also Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 591 (D.N.J. 2016).

> e. Correct any errors relating to misapplied or unexplained payments and provide an accurate payoff and reinstatement figure.

(*Id.*)

Plaintiff alleges that PHH received his QWR/NOE "but did not respond within the time or in the manner the RESPA requires." (*Id.* ¶ 31.) According to Plaintiff, on June 20, 2025, PHH sent him a "packet of documents" in response. (*Id.* ¶ 32.) The response included a transaction history, but the ledger was incomplete and difficult for Plaintiff to interpret. (*Id.* ¶¶ 33-38.) After reviewing the materials, Plaintiff wrote to PHH again on June 28, 2025, identifying specific gaps he perceived in the accounting and requesting additional documents. (*Id.* ¶¶ 40-42.)

On July 3, 2025, PHH sent Plaintiff another "large packet of ledger pages," 190 pages in total. (*Id.* ¶ 43.) Plaintiff alleges the documents in this response are "even more confusing" than those included in PHH's June 20, 2025, response. (*Id.* ¶ 44.) According to Plaintiff, these documents still fail to provide a complete payment history back to origination, do not answer his questions about how the balloon payment was calculated, and do not reconcile the principal, interest, escrow, and suspense allocations that were changed pursuant to the 2016 Loan Modification. (*Id.* ¶¶ 45-49.)

**B. Procedural Background**

On March 2, 2026, Plaintiff filed a Complaint alleging that Defendants violated the RESPA, 12 U.S.C. §§ 2601-2617, and provisions of associated Regulation X, 12 C.F.R. §§ 1024.35-1024.36 (Count I) (ECF No. 1 ¶¶ 59-72), as well as the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-1667f, and associated Regulation Z, 12 C.F.R. §§ 1026.2, 1026.18 (Count II).[6] (*Id.* ¶¶ 73-85.) Plaintiff seeks actual and statutory damages, attorneys' fees, and declaratory and

---

[6] The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

injunctive relief requiring Defendants to provide a comprehensive accounting of Plaintiff's mortgage loan and an explanation of Plaintiff's balloon term. (*Id.* at 20-21).[7] Defendants filed the instant motion to dismiss on March 26, 2026. (ECF No. 6.) Defendants argue that the Complaint fails to state a claim under Rule 12(b)(6) as Plaintiff has not plausibly alleged violations of either the RESPA or TILA. (*See* ECF No. 6-1.)

## II. LEGAL STANDARD

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dirs. of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

---

[7] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

In deciding a Rule 12(b)(6) motion, the court can only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). A court may also consider any document "integral to or explicitly relied upon in the complaint" when ruling on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Plaintiff is proceeding *pro se* and "[t]he obligation to liberally construe a *pro se* litigant's pleadings is well-established." *Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). "Courts are to construe complaints so 'as to do substantial justice,' Fed. R. Civ. P. 8(f), keeping in mind that *pro se* complaints in particular should be construed liberally." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004). "Liberal construction does not, however, require the Court to credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). "[*P*]*ro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "Even a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs*, 984 F. Supp. 2d at 282 (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

## III. <u>DISCUSSION</u>

### A. Real Estate Settlement Procedures Act (RESPA) (Count I)

Plaintiff first alleges that PHH violated the RESPA, and its accompanying Regulation X, by failing to respond to Plaintiff's inquiries as required. (*See* ECF No. 1 ¶¶ 59-72 (citing 12 U.S.C. § 2605(e); 12 C.F.R. § 1024.35; 12 C.F.R. § 1024.36).) "[T]he essential elements of a RESPA

claim under § 2605 are: (1) the submission of a qualified written request by a borrower to a loan servicer; (2) a failure by the loan servicer to timely respond; and (3) damages." *Hawk v. Carrington Mortg. Servs., LLC*, Civ. No. 14-1044, 2016 WL 4414844, at *4 (M.D. Pa. June 23, 2016), *report and recommendation adopted sub nom. Hawk v. Carrington Mortg. Servs., LLC*, Civ. No.14-1044, 2016 WL 4433665 (M.D. Pa. Aug. 17, 2016). A "qualified written request" is:

> a written correspondence from the borrower to the servicer that includes, or otherwise enables the servicer to identify, the name and account of the borrower, and either:
>
> (1) States the reasons the borrower believes the account is in error; or
>
> (2) Provides sufficient detail to the servicer regarding information relating to the servicing of the mortgage loan sought by the borrower.

12 C.F.R. § 1024.31. Within five business days, a servicer receiving a qualified written request "shall provide to the borrower a written response acknowledging receipt of the information request." 12 C.F.R. § 1024.36(c). A servicer must respond to a borrower's qualified written request either with the requested information or a notification that the requested information is not available, 12 C.F.R. § 1024.36(d)(1), and must do so:

> a. Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and
>
> b. For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

12 C.F.R. § 1024.36(d)(2). As for damages, "a plaintiff 'must sufficiently allege one of two types of damages: (1) actual damages to the borrower as a result of the failure to comply with § 2605; or (2) statutory damages in the case of a pattern or practice of noncompliance with the requirements of § 2605.'" *Giordano v. MGC Mortg., Inc.*, 160 F. Supp. 3d 778, 781 (D.N.J. 2016).

A servicer's obligation to acknowledge or respond to a borrower's inquiry under the RESPA is triggered only when the borrower sends a QWR to the servicer's specifically designated address. *See* 12 C.F.R. § 1024.36(b) (permitting a servicer to "establish an address that a borrower must use to request information"); *Hager v. CitiMortgage, Inc.*, Civ. No. 16-03348, 2017 WL 751422, at *8 (D.N.J. Feb. 27, 2017) ("12 C.F.R. § 1024.36(b) empowers a loan servicer to designate an address that a borrower must use to submit any request for information."). A servicer has no duty to respond to a misaddressed QWR when it has designated a specific address for receipt of such requests. *See, e.g.*, *Wease v. Ocwen Loan Servicing, LLC*, 915 F.3d 987, 995 (5th Cir. 2019) ("A loan servicer need not answer a misaddressed QWR—and responding to such a letter does not trigger RESPA duties—if the servicer set an exclusive address."); *Howard v. Village Cap. & Inv., LLC*, Civ. No. 25-04588, 2026 WL 851245, at *4 (D.N.J. Mar. 27, 2026) (holding that where "plaintiffs did not properly submit their QWR to the designated service address under any version of the facts alleged, they fail to meet the first element of a RESPA claim.").

Defendants first argue that Plaintiff has failed to state a RESPA claim because he did not send his QWR to the correct designated address, which is identified in monthly statements sent to Plaintiff, and thus did not trigger an obligation to respond. (ECF No. 6-1 at 10-11; ECF No. 6-3 at 3 (Monthly Statement).) However, "a court may not consider documents outside the pleadings when deciding a motion to dismiss" unless those documents "form the basis of a claim" or are "integral to or explicitly relied upon in the complaint." *Dill v. Yellin*, 725 F. Supp. 3d 471, 480 (D.N.J. 2024) (citation modified). The monthly statements are attached to Defendants' Motion and are not relied upon in the Complaint; as such, the Court will not consider these documents. *Cf. Lenchitz v. Cenlar FSB*, Civ. No. 22-07216, 2024 WL 1052000, at *1 n.2 (D.N.J. Mar. 11, 2024) (considering monthly mortgage statements attached to the defendant's motion to dismiss

because "[the p]laintiffs refer to and rely on each of these documents in their [a]mended [c]omplaint"). With no other evidence before the Court supporting Defendants' argument that Plaintiff sent his QWR to the incorrect address, the Court cannot credit this argument.

Defendants next argue that Plaintiff has failed to state a RESPA claim because Plaintiff's May 27, 2025 letter to PHH, the loan servicer, is not a valid QWR/NOE as it concerns loss mitigation issues. (ECF No. 6-1 at 11-12.) Loss mitigation options are foreclosure-avoidance options offered by the loan's owner or assignee. *See* 12 C.F.R. § 1024.31. As previously noted, servicers only have a duty to respond to QWRs from borrowers "for information relating to the *servicing* of such loan[.]" 12 U.S.C. § 2605(e)(1)(A) (emphasis added). RESPA defines "servicing" as the receipt of scheduled periodic payments from the borrower and the application of those payments pursuant to the terms of the loan. 12 U.S.C. § 2605(i)(3). Requests for information focused *solely* on loss mitigation issues are not QWRs under RESPA. *Brouillette v. CitiMortgage, Inc.*, Civ. No. 23-04304, 2024 WL 2796529, at *7 (D.N.J. May 31, 2024), *motion to certify appeal denied*, 2025 WL 19995 (D.N.J. Jan. 2, 2025) (finding that the plaintiff's requests for information about loss mitigation application did not relate to servicing of the loan and therefore were not QWRs). However, it is also well-established that a borrower's written request qualifies as a QWR if it provides enough detail for the servicer to understand the servicing-related information being sought, even when it also addresses loss-mitigation issues, and no specific "magic words" are required. *Herrera v. Cent. Loan Admin. & Reporting*, Civ. No. 17-4774, 2017 WL 4548268, at *3 (D.N.J. Oct. 12, 2017) (citing *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011)); *see also Brouillette*, 2024 WL 2796529, at *7 (acknowledging that a letter may be a QWR when "it requested not only loss mitigation options, but also 'the servicing file . .

. the amount needed to reinstate the loan, and . . . an accounting of all payments received.'" (quoting *Herrera*, 2017 WL 4548268, at *3)).[8]

Here, Plaintiff's initial letter asked PHH to provide: (1) a complete loan payment history, (2) a copy of the original promissory note, (3) a copy of the mortgage and all recorded assignments, (4) a "complete breakdown and explanation of the deferred balance," (5) "[a]ll documents related to any loan modifications, forbearance, or restructuring. including internal notes and borrower correspondence," (6) a copy of the TILA disclosure "that explains the balloon payment due at maturity or any deferred principal repayment," (7) the identity of the current note holder or investor, (8) "[a] ledger or explanation showing how monthly payments are applied to principal, interest, escrow, and suspense, and the current balance of each," (9) the servicing history of the loan, and (10) "[a]ny applicable pooling and servicing agreement (PSA) or trust agreement." (ECF No. 1-2 at 1-2 (Plaintiff's QWR/NOE); ECF No. 1 ¶ 29.) PHH argues that Plaintiff's requests seek information regarding the 2016 Loan Modification and resulting balloon payment and thus relate to loss mitigation rather than servicing, thereby failing to trigger any obligation to respond under RESPA. (ECF No. 6-1 at 11-12.) However, Plaintiff's letter did not concern *only* loss mitigation, and RESPA does not require a borrower to use precise phrasing or limit a communication exclusively to servicing issues for it to qualify as a QWR/NOE. *See Herrera*, 2017 WL 4548268, at *3. Plaintiff's requests for information regarding the balance and servicing and payment history relate to the servicing of the loan and constitute a valid QWR/NOE. *See Heyman v. Citimortgage, Inc.*, Civ. No. 14-1680, 2019 WL 2642655, at *39 n.50 (D.N.J. June 27, 2019)

---

8 Plaintiff does not appear to dispute the timeliness of PHH's response, (*see* ECF No. 1), and the Court notes that PHH responded within the 30-day window for the information requested, as Plaintiff received its response dated June 20, 2025 after originally sending his QWR/NOE on May 27. (ECF No. 1-2 at 5.)

("RESPA's definition of servicing narrowly focuses on the exchange of 'payments' between a servicer and a borrower."). Therefore, PHH did have an obligation to respond to Plaintiff's servicing-related requests.

Indeed, Plaintiff concedes that PHH responded to his QWR/NOE. (*See* ECF No. 1 ¶ 4; ECF No. 1-2 at 5-6 (PHH's response to QWR).) PHH provided information in response to Plaintiff's requests regarding his loan's payment history (requests 1 and 8), deferred balance (request 4), identity of the note holder (request 7), and servicing history (request 9). (ECF No. 1-2 at 5-6.) Regarding Plaintiff's other requests (requests 2-3, 5-6 and 10), PHH contemporaneously informed Plaintiff that these requests did not concern servicing, and it would not respond. (*Id.* at 5.)

The Court agrees that PHH did not have an obligation to respond to Plaintiff's requests that did not concern servicing of the loan. "RESPA does not require a servicer to respond to any question that a borrower may ask—no matter how broad, vague, or far afield." *DeVary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096, 1106 (D. Minn. 2010). "Courts routinely interpret section 2605 as requiring a QWR to relate to the servicing of a loan, rather than the creation or modification of a loan." *Gates v. Wachovia Mortg., FSB*, Civ. No. 09-02464, 2010 WL 2606511, at *3 (E.D. Cal. June 28, 2010) (granting motion to dismiss where the plaintiff's request for information was "primarily aimed at uncovering documents relating to the ownership of the obligation, as well as seeking recission or modification by calling into question the validity of the loan" and servicer does not have an obligation under RESPA to answer such requests). Requests related to servicing also do not include "documents and information that are merely related to other aspects of the loan, such as its origination, transfer, or continuing validity." *Hager*, 2017 WL 751422, at *6; *see also Ashford v. Bank of Am., N.A.*, Civ. No. 16-1445, 2016 WL 11467723, at

*3-4 (N.D. Ga. Aug. 31, 2016), *report and recommendation adopted*, 2016 WL 5746259 (N.D. Ga. Oct. 4, 2016) (holding that the plaintiff's requests for information "relating to the loan in general, and specifically aimed at verifying the validity or existence of or details regarding the loan itself" did not qualify as a valid QWR as the requests did not relate to servicing and granting motion to dismiss RESPA claim). Plaintiff's requests for information seeking copies of the original promissory note, mortgage and all recorded assignments, any pooling or servicing agreement, all documents related to loan modifications, forbearance, or restructuring,[9] and a TILA disclosure regarding the balloon payment, (ECF No. 1-2 at 1-2), are requests pertaining to the creation or modification of a loan rather than servicing, and as such did not obligate PHH to respond under RESPA. *See Gates*, 2010 WL 2606511, at *3; *Ashford*, 2016 WL 11467723, at *3-4.

As to Plaintiff's requests that PHH did address Plaintiff challenges PHH's response as insufficient. In particular, Plaintiff alleges that the "packet of documents" PHH sent in response to Plaintiff's requests was incomplete, as the provided transaction history did not cover the entire period from loan origination and the documents included numerous same-day reversals and adjustments in the transaction history without explaining their significance to the payment history. (ECF No. 1 ¶¶ 32-39.) Plaintiff also alleges that PHH's response was difficult for him to understand. (*Id.* ¶¶ 38-39.) While disclosures under RESPA "must be clear and conspicuous, in

[9] PHH also declined to respond to Plaintiff's request seeking "[a]ll documents related to any loan modifications, forbearance, or restructuring, including internal notes and borrower correspondence," because it was overbroad and unduly burdensome. (ECF No. 1-2 at 1, 5.) RESPA does not obligate a servicer to respond to an overbroad or unduly burdensome request, which the accompanying regulation defines as a request to which a "diligent servicer" could not respond without exceeding the specified time limits or "incurring costs (or dedicating resources) that would be unreasonable in light of the circumstances." 12 C.F.R. § 1024.36(f)(iv). The Court agrees that this request for "*all* documents" is an overbroad and unduly burdensome request and PHH was not obligated to respond, in addition to the fact that the request is not related to servicing of the loan.

writing, and in a form that a recipient may keep," 12 C.F.R. § 1024.32(a)(1), "RESPA does not penalize the mortgage servicer for providing information that a borrower has difficulty understanding, as long as the servicer provided the information requested by the borrower," *Munoz v. CitiMortgage, Inc.*, Civ. No. 20-2311, 2021 WL 4133748, at *6 (M.D. Fla. Sept. 10, 2021), *aff'd*, Civ. No. 21-13474, 2023 WL 164023 (11th Cir. Jan. 12, 2023); *see also Eileen Frances Living Tr. v. Bank of Am.*, Civ. No. 15-227, 2016 WL 6694489, at *3 (E.D. Wash. Nov. 14, 2016) (holding that "[a]lthough the law requires a servicer to respond to a QWR, the law does not require that all responses and explanations be provided in a way that Plaintiffs could understand"). As such, Plaintiff's difficulty in understanding the transaction history documents PHH provided does not *per se* amount to a RESPA violation.

However, the Court finds that Plaintiff has sufficiently alleged, to survive a motion to dismiss, a RESPA violation based on PHH's incomplete response. It is well-established that "[a] violation of 12 U.S.C. § 2605(f) occurs when a servicer who receives a QWR either fails to respond *or provides an inadequate response*." *In re Bryce*, 491 B.R. 157, 181 (Bankr. W.D. Wash. 2013) (emphasis added); *see also In re Coppola*, 596 B.R. 140, 162 (Bankr. D.N.J. 2018) (holding that "the borrower here has set forth a plausible RESPA claim for failure to adequately respond to their Request(s) for Information"). For example, in *Santhosh v. Wells Fargo Bank, N.A.*, the court concluded that when the plaintiff requested "a 'complete and itemized statement of the payment history from the inception of the loan to the date of this letter'" and the servicer "only provided payment history dating back to 2015, and claimed that older information was unavailable due to its retention policy," but later provided pre-2015 payment history when the plaintiff asked again, the plaintiff plausibly alleged a RESPA violation. Civ. No. 25-1447, 2026 WL 1413883, at *5 (E.D.N.Y. May 20, 2026) (denying in part motion to dismiss RESPA claim for this alleged

violation). *Santhosh* parallels the facts in this case, where Plaintiff requested a "complete loan payment history," (ECF No. 1-2 at 1), and after advising PHH that its initial response omitted pre-2011 servicing data, (*id.* at 31), PHH responded and provided "available payment histories from before May 16, 2011," (ECF No. 1-3 at 1). Plaintiff's allegations that PHH's initial response included unexplained reversals and adjustments in the payment history also sufficiently alleges a RESPA violation. *See Roche v. Rushmore Loan Mgmt. Servs., LLC*, Civ. No. 19-24872, 2020 WL 1452346, at *2, *6-8 (S.D. Fla. Mar. 25, 2020) (concluding that plaintiffs successfully stated a RESPA claim when complaint alleged the servicer inadequately responded to QWR requesting information on the loan payoff amount and payment history by including in its response "vague or estimated costs and fees without any explanation as to what services these fees were incurred for").

Where a RESPA violation is adequately pled, a plaintiff must also plead either actual damages resulting from the servicer's violation of § 2605 or statutory damages based on a demonstrated pattern or practice of noncompliance. *See Giordano*, 160 F. Supp. 3d at 781. Defendants argue that even if Plaintiff has pled a RESPA violation, the claim must be dismissed because Plaintiff has failed to sufficiently allege damages under RESPA. (ECF No. 6-1 at 12-14.) The Court disagrees. "RESPA contains an express requirement that damages accrue 'as a result of the failure' to comply with the provisions of the Act." *Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 592 (D.N.J. 2016) (citing 12 U.S.C. § 2605(f)). Plaintiff alleges actual damages consisting of the time and expense and postage and costs incurred in sending letters. (ECF No. 1 ¶ 70.) The Court determines these allegations are sufficient to plead actual damages. While costs incurred from the preparation of an initial QWR cannot constitute actual damages as they are costs incurred before any alleged violation, costs incurred from the preparation of later requests due to an incomplete or inadequate response can support actual damages. *Compare Block*,

221 F. Supp. 3d at 592 ("Courts that have directly considered the issue of pre-violation letter preparation costs have found that such costs are not actual damages under RESPA because RESPA requires the damages to flow as a result of the violation." (citation modified)), *with Santhosh*, 2026 WL 1413883, at *5 ("[T]he [plaintiffs] allege that QWR 2 was required because of [the servicer's] inadequate response to QWR 1. That is enough at this stage, because 'damages stemming from the preparation of later requests . . . would not have needed to [be] prepare[d] but for" [the servicer's] incomplete response. The damages from this shortfall may be insubstantial, but that is a question for a later date." (internal citations omitted)). Allegations like Plaintiff's of photocopying costs or postage costs, "incurred *after* an incomplete or insufficient response to a QWR, are actionable under RESPA." *Torsiello v. Ocwen Loan Servicing, LLC*, Civ. No. 16-80804, 2016 WL 11811404, at *3 (S.D. Fla. July 14, 2016) (emphasis in original).

Plaintiff also alleges actual damages in the form of emotional distress, and an inability to remain fully informed about his loan. (ECF No. 1 ¶ 70.) "Emotional damages can support a claim for RESPA violations" and constitute actual damages under RESPA. *Rivera v. Bayview Loan Servicing*, Civ. No. 19-877, 2020 WL 1508328, at *8 (E.D. Pa. Mar. 30, 2020); *Giordano*, 160 F. Supp. 3d at 785. Here, Plaintiff alleges that "[a]s a direct and proximate cause of PHH's RESPA violations," he suffered "[e]motional distress, anxiety, and confusion from being unable to determine what he truly owes and whether he can afford to keep his home" as well as an "[i]nability to make informed decisions about refinancing, selling, or otherwise resolving or planning for the future of the loan because PHH has not provided a clear, accurate accounting." (ECF No. 1 ¶¶ 70(c)-(d).) The Court finds these allegations are sufficient at the pleading stage.

The Court holds that Plaintiff has alleged facts sufficient for this Court to infer that an underlying RESPA violation occurred due to PHH's allegedly incomplete response to Plaintiff's

initial QWR, which caused Plaintiff damages. *See Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 662 (D.N.J. 2018) (explaining that a plaintiff must show both the existence of damages and that the servicer's breach caused those damages). As such, Plaintiff's RESPA claim may proceed.

### B. Truth in Lending Act (TILA) (Count II)

Plaintiff also alleges that both PHH and Deutsche Bank violated the TILA and its accompanying Regulation Z, 12 C.F.R. §§ 1026.1 *et seq.* (*See* ECF No. 1 ¶¶ 73-85.) The TILA is a federal law designed to protect consumers by ensuring they receive consistent and clear credit-related disclosures from lenders, and is implemented through Regulation Z. *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 303-04 (3d Cir. 2005). Plaintiff specifically alleges violations under 15 U.S.C. § 1638(a) and 12 C.F.R.§ 1026.18, which specify the required disclosures for credit transactions like Plaintiff's mortgage loan.[10] Defendants make several arguments for why Plaintiff's TILA claim fails, and the Court considers those arguments in turn. (ECF No. 6-1 at 14-17.)

#### *1. TILA Claim against PHH*

The Court begins with Defendants' argument that Plaintiff cannot maintain a TILA claim against PHH. (ECF No. 6-1 at 15.) As a preliminary matter, in his opposition brief, Plaintiff appears to drop his TILA claim against PHH, conceding that "to the extent PHH is treated solely as a servicer and not as the owner or assignee of the obligation, Plaintiff does not seek to press a

---

[10] A mortgage loan is a closed-end loan covered under 15 U.S.C. § 1638(a) of the TILA. *Burress v. Freedom Mortg. Corp.*, Civ. No. 20-15242, 2021 WL 4059831, at *4 (D.N.J. Sept. 7, 2021) ("As for a 'closed-end transaction', [the] TILA does not specifically define the term, but courts construe it to mean a transaction where the finance charge is divided into the term of the loan and incorporated into time payments, like a mortgage or car loan." (citation modified)).

broader TILA damages theory against PHH than the statute permits."[11] (ECF No. 7 at 21.) As such, this claim shall be dismissed.

Even if the Court were to proceed to consider the merits of Defendants' argument on this claim, its motion must be granted. "[O]nly a creditor and its assignees can be held liable under TILA for violative acts or omissions." *Hartman v. Deutsche Bank Nat. Tr. Co*., Civ. No. 07-5407, 2008 WL 2996515, at *2 (E.D. Pa. Aug. 1, 2008). "A creditor is one who both regularly extends consumer credit and is the person to whom the debt arising from the consumer credit is initially payable." *Id.* (citing 15 U.S.C. § 1602(f)). PHH is a "mortgage loan servicer and corporation" that "regularly conducts mortgage servicing business in New Jersey." (*Id.* ¶ 9.) Plaintiff concedes that PHH is indeed his mortgage loan servicer, and not the owner of his loan to whom his debt is ultimately payable. (*Id.*) It is well-established that "servicers of a loan are not liable under [the] TILA because [they] do[] not own the obligation." *Schiano v. MBNA*, Civ. No. 05-1771, 2013 WL 2452681, at *22 (D.N.J. Feb. 11, 2013), *aff'd*, Civ. No. 05-1771, 2013 WL 2455933 (D.N.J. June 3, 2013). Because PHH is merely a loan servicer and not a creditor, it is not a proper defendant for a TILA claim and therefore, this claim against PHH must be dismissed with prejudice.

***2. TILA Claim against Deutsche Bank***

Plaintiff also brings a TILA claim against Deutsche Bank. (ECF No. 1 ¶ 83.) Plaintiff alleges that Deutsche Bank, a national banking association, "claims to be the current owner or trustee-holder of Plaintiff's loan," (*id.* ¶ 10), and can be held liable for violating the TILA, (*id.*; *see also* ECF No. 7 at 22-23). The TILA places responsibility for violations on creditors and assignees. *Longo v. First Nat. Mortg. Sources*, Civ. No. 07-4372, 2009 WL 313334, at *4 (D.N.J. Feb. 6,

---

[11] "A plaintiff who expressly indicates an intention to withdraw a claim in a brief has abandoned that claim." *Kehoe v. Hard Rock Hotel & Casino,* Civ. No. 24-490, 2025 WL 1693881, at *3 (D.N.J. June 17, 2025).

2009), *opinion reinstated in part*, Civ. No. 07-4372, 2010 WL 415330 (D.N.J. Jan. 29, 2010). "The term creditor includes a creditor's assignee, transferee, or subrogee who so participates." *Wright v. Castle Point Mortg.*, Civ. No. 05- 4851, 2006 WL 1468678, at *4 (D.N.J. May 24, 2006) (quoting 12 C.F.R. § 202.2(l)). As such, Deutsche Bank appears to be a proper defendant against whom the TILA can be asserted, and Defendants do not argue otherwise.[12]

Defendants argue that Plaintiff has failed to state a claim because the "TILA does not impose disclosure obligations for mortgage loan modifications[.]" (ECF No. 6-1 at 14.) New TILA disclosures are required only when a loan modification qualifies as a "refinancing," meaning the existing obligation is satisfied and replaced with a new one. 12 C.F.R. § 1026.20(a). The TILA regulation expressly provides that common loan-modification changes, including interest-rate reductions, payment-schedule adjustments, and other alterations that do not replace the original obligation are not treated as refinancings. *Id.* Because these modifications do not create a new transaction, they do not trigger any TILA disclosure requirements. *See id.* Furthermore, courts in this Circuit have ruled that the "TILA does not require additional disclosures to be made regarding a loan modification." *Mallory v. Wells Fargo Bank, N.A.*, Civ. No. 19-0744, 2023 WL 5443493, at *10 (M.D. Pa. June 21, 2023), *report and recommendation adopted as modified*, 688 F. Supp. 3d 218 (M.D. Pa. 2023). Therefore, Plaintiff cannot maintain a claim against Deutsche Bank under the TILA for failing to disclose information it was not obligated to disclose.

Lastly, Defendants argue that, "[e]ven if Defendants were required to provide TILA disclosures with the 2016 Modification [,] . . . any claims based on the failure to do so is time

[12] Defendants confirm that Deutsche Bank is the current note holder and owner of the loan and loan modification. (ECF No. 1-2 at 6.) The Complaint reflects that the 2016 Loan Modification was executed with the "then servicer," and only later was transferred to PHH and Deutsche Bank. (*See generally* ECF No. 1.)

barred." (ECF No. 6-1 at 17.) The Court agrees, and dismissal is also warranted for this reason. "The Third Circuit has held that in the case of a loan, the date of the TILA violation is when the loan contract is executed." *Blackhall v. Access Grp*., Civ. No. 10-508, 2010 WL 3810864, at *3 (D.N.J. Sept. 22, 2010) (citing *Bartholomew v. Northampton Nat'l Bank*, 584 F.2d 1288, 1296 (3d Cir. 1978)). Under the TILA, a claim must be brought "1 year from the date on which the first regular payment of principal is due under the loan." 15 U.S.C. § 1640(e); *see also Burress*, 2021 WL 4059831, at *3 ("TILA limits the time a person aggrieved under the Act may file suit. TILA provides that 'any action under this section may be brought . . . within one year from the date of the occurrence of the violation."' (quoting (15 U.S.C. § 1640(e))). Here, the 2016 Loan Modification is the transaction, rather than the original loan, purportedly triggering Deutsche Bank's disclosure obligation. But Plaintiff did not file suit until 2026—ten years later. Even accepting Plaintiff's allegations regarding inadequate disclosure as true, the claim is time-barred, as "the one-year limitations period begins to run from the date the loan closed." *Gehman v. Argent Mortg. Co. LLC*, 726 F. Supp. 2d 533, 540 (E.D. Pa. 2010).

As such, Plaintiff cannot bring a viable TILA claim against Deutsche Bank both because (1) the loan modification did not trigger an obligation to make TILA disclosures; and (2) Plaintiff's TILA claim is time-barred. This claim must be dismissed with prejudice. *See DeLuca v. CitiMortgage*, Civ. No. 11-3634, 2012 WL 32136, at *5 (D.N.J. Jan. 4, 2012) (dismissing TILA claim with prejudice because the untimeliness cannot be cured).

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, Defendant's Motion to Dismiss (ECF No. 6.) is **GRANTED in part** and **DENIED in part**. An appropriate Order follows.

Dated: August 24, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE